# 16-3217-cr

### United States Court of Appeals
### for the Second Circuit

_____

Docket No. 16-3217-cr

_____

UNITED STATES OF AMERICA,

Appellee,

-against-

BRIAN RUBEL

Defendant-Appellant.

_____

APPEAL FROM A FINAL JUDGMENT
OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**APPENDIX FOR DEFENDANT-APPELLANT BRIAN RUBEL**

FEDERAL DEFENDERS OF NEW YORK, INC.
APPEALS BUREAU
52 Duane Street, 10th Floor
New York, New York 10007
Tel. No.:  (212) 417-8742

Attorney for Defendant-Appellant
**BRIAN RUBEL**

**PHILIP L. WEINSTEIN,**
  Of Counsel

A000001

## TABLE OF CONTENTS TO THE APPENDIX

District court docket sheet.. . . . . . . . . . . . . . . A 03

Transcript. . . . . . . . . . . . . . . . . . . . . . . A 12

Government's Sentencing Memorandum. . . . . . . . . . . . A 47

Judgment. . . . . . . . . . . . . . . . . . . . . . . . A 57

Judgment in a Criminal Case
(For Revocation of Probation or Supervised Release).. . . . . A 63

Notice of appeal. . . . . . . . . . . . . . . . . . . . A 68

i

**A000002**

CLOSED,APPEAL,ECF,PRIOR

## U.S. District Court
## Southern District of New York (White Plains)
## CRIMINAL DOCKET FOR CASE #: 7:09-cr-00898-CS-1

Case title: USA v. Rubel
Magistrate judge case number: 7:09-mj-01357-UA

Date Filed: 09/22/2009
Date Terminated: 12/08/2010

Assigned to: Judge Cathy Seibel

**Defendant (1)**

**Brian Rubel**
*TERMINATED: 12/08/2010*

represented by **Amy Margaret Attias**
Federal Defenders of New York Inc.
(White Plains)
300 Quarropas Street
White Plains, NY 10601
(914) 428-7124
Fax: (914) 997-6872
Email: amaesq@optonline.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or*
*Community Defender Appointment*

**Pending Counts**

ACTIVITIES RE MATERIAL
CONSTITUTING/CONTAINING
CHILD PORNO
(2)

**Disposition**

sentenced to a term of imprisonment of
sixty-six months on Count Two,
followed by a term of Supervised
Release of Life.Count one is dismissed
on consent of the Govt. $100.00 Special
Assessment. No Fine. SRV -
IMPRISONMENT: Twelve (12)
months on Specifications One, Two,
Three, and Four, concurrent.
SUPERVISED RELEASE: The Court
revokes the previously imposed term of
Supervise Release, and re-imposes a
term of Supervised Release of Life.

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

**Disposition**

Case 16-3217, Document 20, 02/28/2017, 1978437, Page4 of 69

ACTIVITIES RE MATERIAL
CONSTITUTING/CONTAINING
CHILD PORNO
(1)

Dismissed

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| 18:2252A.F | |

**Plaintiff**

USA          represented by **Benjamin Rial Allee**
U.S. Attorney's Office, White Plains
300 Quarropas Street
White Plains, NY 10601
(914) 993-1962
Fax: (914) 993-9036
Email: benjamin.r.allee@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/05/2009 | 1 | COMPLAINT as to Brian Rubel (1). (Signed by Magistrate Judge Paul E. Davison) (mml) [7:09-mj-01357-UA] (Entered: 06/08/2009) |
| 06/05/2009 | | Arrest of Brian Rubel. (mml) [7:09-mj-01357-UA] (Entered: 06/08/2009) |
| 06/05/2009 | 2 | CJA 23 Financial Affidavit by Brian Rubel. (Amy Attias, esq. (FDNY) appointed subject to report on Status of Defendant's "trust fund" within 30 days.) (Signed by Magistrate Judge Paul E. Davison) (mml) [7:09-mj-01357-UA] (Entered: 06/08/2009) |
| 06/05/2009 | | Minute Entry for proceedings held before Magistrate Judge Paul E. Davison:Initial Appearance as to Brian Rubel held on 6/5/2009 with AUSA Benjamin Allee and Defendant's attorney Amy Attias. 100k PRB and two FRP (parents). Travel is restricted to SDNY/EDNY. Travel documents surrendered and no new applications. Strict pretrial, home detention and electronic monitoring. See attachment to bond for additional conditions. Date for preliminary hearing: 7/1/2009 on defendant's consent. (mml) [7:09-mj-01357-UA] (Entered: 06/08/2009) |
| 06/05/2009 | | Set/Reset Hearings as to Brian Rubel: Preliminary Examination set for 7/1/2009 at 09:00 AM before Judge Unassigned.. (mml) [7:09-mj-01357-UA] (Entered: 06/08/2009) |

| 06/08/2009 | 3 | PRB Bond Entered as to Brian Rubel in amount of $ $100,000 to be co-signed by 2 FRP (Deft's. Parents)Unsecured; pre-trial supervision with drug testing and mental health counseling; surrender all travel doc's; with no new application; home detention; electronic monitoring; travel restricted to the SDNY/ENDY. (jma) [7:09-mj-01357-UA] (Entered: 06/09/2009) |
| 06/15/2009 | 4 | ENDORSED LETTER as to Brian Rubel addressed to Judge Paul E. Davison from Amy Attias dated 6/12/09 re: Request to represent the defendant. ENDORSEMENT: Application Granted. Federal Defenders appointed for all purposes... (Signed by Magistrate Judge Paul E. Davison on 6/15/09)(fk) [7:09-mj-01357-UA] (Entered: 06/16/2009) |
| 07/01/2009 | 5 | ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Brian Rubel. Time excluded from 7/1/2009 until 7/29/2009.. (Signed by Magistrate Judge George A. Yanthis on 7/1/2009)(mml) [7:09-mj-01357-UA] (Entered: 07/02/2009) |
| 07/01/2009 | 6 | AFFIRMATION of Benjamin R. Allee by USA as to Brian Rubel. (mml) [7:09-mj-01357-UA] (Entered: 07/02/2009) |
| 07/08/2009 | | Minute Entry for proceedings held before Magistrate Judge Paul E. Davison:Bond Hearing as to Brian Rubel held on 7/8/2009 with deft. atty. Amy Attias and AUSA Benjamin Allee. Deft's. request that father's computer be allowed in residance denied. Release cond's. modified to extent that deft. may go out onto deck for 2 hrs. for purposes of sister's going-away party on 7/18/2009. All other cond's. remain in effect. (Court Reporter CourtFlow) (jma) [7:09-mj-01357-UA] (Entered: 07/08/2009) |
| 07/29/2009 | 7 | ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Brian Rubel. Time excluded from 07/29/2009 until 08/26/2009.. (Signed by Magistrate Judge George A. Yanthis on 07/29/2009)(jma) [7:09-mj-01357-UA] (Entered: 07/31/2009) |
| 07/29/2009 | 8 | AFFIRMATION of Benjamin Allee by USA as to Brian Rubel re: 7 Order to Continue - Interest of Justice. (jma) [7:09-mj-01357-UA] (Entered: 07/31/2009) |
| 08/26/2009 | | ORDER TO CONTINUE IN THE INTEREST OF JUSTICE (Third) as to Brian Rubel. Time excluded from 8/26/2009 until 9/23/2009.. (Signed by Magistrate Judge Paul E. Davison on 8/26/2009)(mml) [7:09-mj-01357-UA] (Entered: 08/27/2009) |
| 08/26/2009 | 9 | AFFIRMATION of Benjamin R. Allee by USA as to Brian Rubel. (mml) [7:09-mj-01357-UA] (Entered: 08/27/2009) |
| 09/16/2009 | 10 | ENDORSED LETTER as to Brian Rubel addressed to Hon. Paul E. Davison from Amy M. Attias dated 09/09/2009 re:........Mr. Rubel asks to be allowed to leave his home to attend services at the Greenburgh Jewish Center..........ENDORSED, Granted on consent, as indicated in counsel's 09/16/2009 follow up letter. All cond's. laid out in both pagers of this letter are to be observed. APPLICATION GRANTED. (Signed by Magistrate Judge Paul E. Davison on 9/16/2009)(jma) [7:09-mj-01357-UA] (Entered: 09/17/2009) |
| 09/22/2009 | 11 | |

Case 16-3217, Document 20, 02/28/2017, 1978437, Page6 of 69

| | | INDICTMENT FILED as to Brian Rubel (1) count(s) 1-2. (jma) (Entered: 09/23/2009) |
|---|---|---|
| 09/22/2009 | | Case Designated ECF as to Brian Rubel. (jma) (Entered: 09/23/2009) |
| 09/23/2009 | | Minute Entry for proceedings held before Judge Cathy Seibel:Pretrial Conference as to Brian Rubel held on 9/23/2009 Defendant is present with counsel Amy M. Attias, Esq. AUSA Dan Bloom, Esq. is present (substituting for Ben Allee, AUSA) A conference is scheduled for December 2, 2009 at 1:00 p.m. The Court finds excluded time between now and December 2, 2009, and finds that the ends of Justice in allowing defense counsel to get a psychiatric examination completed, which may lead to a more favorable disposition, and to allow the parties time to discuss results once the report is received, outweigh the interests of the public and the defendant in a speedy trial. Bail is continued. See transcript(Court Reporter Angela O' Donnell) (jma) (Entered: 09/24/2009) |
| 09/23/2009 | | Set/Reset Hearings as to Brian Rubel: Conference set for 12/2/2009 at 01:00 PM before Judge Cathy Seibel.. (jma) (Entered: 09/24/2009) |
| 09/23/2009 | | Minute Entry for proceedings held before Magistrate Judge Paul E. Davison:Arraignment as to Brian Rubel (1) Count 1-2 held on 9/23/2009 with deft. atty. Amy Attias and AUSA Benjamin Allee. The Deft. waives public reading and enters a not guilty plea. The case is assigned to Judge Seibel. Time is excluded through 9/30/2009. Deft. continued on release. (jma) (Entered: 09/24/2009) |
| 09/23/2009 | | Minute Entry for proceedings held before Magistrate Judge Paul E. Davison: Plea entered by Brian Rubel (1) Count 1-2 Not Guilty. (jma) (Entered: 09/24/2009) |
| 09/23/2009 | | Judge update in case as to Brian Rubel. Judge Judge Cathy Seibel added. Judge Judge Unassigned no longer assigned to case. (jma) (Entered: 09/24/2009) |
| 12/03/2009 | 12 | ENDORSED LETTER as to Brian Rubel addressed to Judge Cathy Seibel from Amy Attias dated 11/30/09 re: Request for adjournment of status conference. ENDORSEMENT: Conference adjourned to 2/4/10 at 12:45 pm. The time between today and that date is excluded under the speedy trial act in the interest of justice. I find that the ends of justice served by the exclusion - obtaining a psychiatric evalustion and using it in connection with plea discussions outweigh the best interest of the public and the Defendant in a speedy trial. So Ordered. (Signed by Judge Cathy Seibel on 12/2/09)(fk) (Entered: 12/04/2009) |
| 02/04/2010 | | Minute Entry for proceedings held before Judge Cathy Seibel:Bail Modification Hearing as to Brian Rubel held on 2/4/2010. Defendant is present with counsel, Amy M. Attias, Esq.AUSA Douglas Bloom, Esq. is presentAUSA Ben Allee, Esq. is presentPretrial Services Officer Vincent Adams is present.Court Reporter is Albi Gorn. Status conference is scheduled forMarch 5, 2010 at 3:30 p.m. at which time a trial date will be set if there is no disposition. Bail modification is requested: Defendants mother has requested that defendant be permitted to travel to Florida for a couple of days to visit his ill grandfather. Pretrial Services and the Government oppose the request. Pretrial Services does not believe that they can adequately supervise defendant in Florida. The Court denies request to |

| | | |
|---|---|---|
| | | modify the conditions of bail. The Court finds excluded time thru March 5, 2010 in the interests of Justice. Ends of Justice served by exclusion outweigh the best interests of defendant an public in a speedy trial in order to determine if there will be a disposition of this case. There will be no further extensions of time. See transcript. Bail is continued. (fk) (Entered: 02/05/2010) |
| 03/05/2010 | | Minute Entry for proceedings held before Judge Cathy Seibel:Pretrial Conference as to Brian Rubel held on 3/5/2010.Defendant is present with counsel, Amy Attias, Esq. AUSA Douglas Bloom, Esq. is present Court Reporter is Christina Arends-Dieck. A conference is scheduled for March 15, 2010 at 9:30 a.m. Time is excluded under the Speedy Trial Act through March 15, 2010. The Court finds that the exclusion of time, permitting the parties to determine if a plea can be reached in this matter outweighs the interests of the defendant and the public in a Speedy Trial. If no plea is taken on March 15, 2010, a trial date will be scheduled for April or May 2010. (jma) (Entered: 03/09/2010) |
| 03/05/2010 | | Set/Reset Hearings as to Brian Rubel: Pretrial Conference set for 3/15/2010 at 09:30 AM before Judge Cathy Seibel.. (jma) (Entered: 03/09/2010) |
| 03/15/2010 | | Minute Entry for proceedings held before Judge Cathy Seibel:Change of Plea Hearing as to Brian Rubel held on 3/15/2010. Defendant is present with counsel, Amy M. Attias, Esq. AUSA Benjamin Allee, Esq. is present.Court Reporter is Mary Staten. Plea began. Defendant is sworn. The Court finds defendant is fully competent to enter an informed plea at this time. The Court finds that defendant knows his rights, waives them knowingly and voluntarily and because the plea is entered knowingly and voluntarily, the Court accepts defendants plea of Guilty to Count Two. PSR is ordered. Sentencing is scheduled for June 18, 2010 at 2:30 p.m. Bail is continued and modified as follows: Defendant is to attend Sex Anonymous meetings at least twice a week. If there is an inpatient program that would be helpful, he should be admitted. See transcript. (fk) (Entered: 03/17/2010) |
| 03/15/2010 | | Minute Entry for proceedings held before Judge Cathy Seibel: Plea entered by Brian Rubel (1) Guilty as to Count 2. (Court Reporter Mary Staten) (fk) (Entered: 03/17/2010) |
| 03/15/2010 | | Oral Order of Referral to Probation for Presentence Investigation and Report as to Brian Rubel. (fk) (Entered: 03/17/2010) |
| 03/15/2010 | | Set/Reset Hearings as to Brian Rubel: Sentencing set for 6/18/2010 at 02:30 PM before Judge Cathy Seibel.. (fk) (Entered: 03/17/2010) |
| 03/17/2010 | 13 | Letter by USA as to Brian Rubel addressed to Judge Cathy Seibel from Benjamin Allee dated 3/16/2010. The government respectfully submits this letter in response to the Court's direction at the conclusion of the plea proceeding in the above-referenced case, to address the issue whether the provision of the Adam Walsh Act pertaining to mandatory electronic monitoring for defendants on release pending trial applies to the defendant... (jty) (Entered: 03/17/2010) |
| 04/30/2010 | 14 | |

ENDORSED LETTER as to Brian Rubel addressed to Judge Cathy Seibel from Amy M. Attias dated 4/29/2010. I write to ask permission for Mr. Rubel to attend his grandfather's funeral which will take place in New York this Sunday. May 2, 2010. It is my understanding that the funeral and family plans will take most of the day. If your Honor grants the request, details will be arranged between Mr. Rubel and Pretrial. ENDORSEMENT: Application Granted. SO ORDERED.. (Signed by Judge Cathy Seibel on 4/30/2010)(jty) (Entered: 04/30/2010)

| 05/17/2010 | 15 | PROBATION FORM P56397 PETITION as to Brian Rubel. Petitioning the Court: requesting that he be ordered to undergo a psychosexual evaluation... The Court Orders: Psychosexual evaluation ordered. (Signed by Judge Cathy Seibel on 5/17/2010)(jma) (Entered: 05/18/2010) |
| 06/07/2010 | | Minute Entry for proceedings held before Judge Cathy Seibel:Pretrial Conference as to Brian Rubel held on 6/7/2010 Defendant is present with counsel, Amy M. Attias, Esq. AUSA Benjamin Allee, Esq. is present, Court Reporter is Mary Staten. Conference held. Bail conditions are modified to permit Pretrial Services to remove the defendants bracelet on the day he is to check into the Keystone Center in Chester, Pa.,. Defendants parents are to accompany him to the Center. Pretrial Services will be in contact with Keystone to be sure they understand that the Court Orders that the privilege of leaving the grounds does not apply to defendant, and that if he breaches this rule, the Center is to immediately notify Mr. Adams (Pretrial Services). Unless defendant is going directly to another facility when he leaves this Center, monitoring and home detention will resume. The Court directs that defendant sign a consent for Pretrial Services to be in contact with Keystone. All previous conditions of bail remain in place. Bail is continued. See transcript. (jty) (Entered: 06/08/2010) |
| 06/28/2010 | | Minute Entry for proceedings held before Judge Cathy Seibel:Pretrial Conference as to Brian Rubel held on 6/28/2010 Defendant is present with counsel, Amy Attias, Esq. AUSA Benjamin Allee, Esq. is present. Court Reporter is Angela ODonnell. Conference held. Defendant was in an inpatient program which he did not complete due to his failure to comply with the rules of the program. Defense counsel requests permission for defendant to enter another program in Texas. The Court restores all bail conditions previously set, including the bracelet. The psychosexual evaluation is to be done during these next two weeks if that can be arranged. His father has leave to take him to Social Security, but he must stay with his father. His father must take him to S.A. meetings (not in the room but he has to bring him there and take him home). A conference before this Court is scheduled for 12:30 p.m. on July 13, 2010, at which time there must be a concrete proposal submitted to the Court regarding the program in Texas. If he is admitted before the July 13, 2010 conference, counsel are to so advise the Court, and the conference will be cancelled. Bail is continued on the conditions set by this Court. See transcript. (jty) (Entered: 06/28/2010) |
| 06/28/2010 | | Set/Reset Hearings as to Brian Rubel: Pretrial Conference set for 7/13/2010 at 12:30 PM before Judge Cathy Seibel.. (jty) (Entered: 06/28/2010) |
| 06/29/2010 | | |

| | | Minute Entry for proceedings held before Judge Cathy Seibel:Bond Hearing as to Brian Rubel held on 6/29/2010. Defendant is present with counsel, Amy Attias, Esq. AUSA Ben Allee, Esq. is presentCourt Reporter is Angela ODonnell Vincent Adams, Pretrial Services Officer is present Conference held regarding defendant attending a program at the Sante Center in Texas. The Court will approve this application upon approval of Pretrial Services Officer Vincent Adams. The Court orders that one of his parents accompany him to the Sante Centers premises in Texas. The facility has to be informed that the defendant is not permitted to leave the premises except when supervised. Bail conditions are modified as described, subject to Mr. Adams approval of the Sante Center. The Court further directs that this facility notify Pretrial Services at least one week before they plan to discharge defendant, so that Mr. Adams can plan for the Defendants return. A parent or responsible adult is to accompany the defendant home. Bail is continued under the conditions previously and herein set forth. Travel is extended to the N.D. of Texas only for the defendant to travel to and attend the program at Sante Center in Texas. (Court Reporter Angela O' Donnell) (jma) (Entered: 06/29/2010) |
|---|---|---|
| 06/29/2010 | | Minute Entry for proceedings held before Judge Cathy Seibel:Bond Hearing as to Brian Rubel held on 6/29/2010. Defendant is present with counsel, Amy Attias, Esq. AUSA Ben Alle, Esq. is present Court Reporter is Angela ODonnell Vincent Adams, Pretrial Services Officer is present CORRECTION TO ENDORSEMENT OF 6/29/10 Travel is extended to the Eastern District of Texas (not the Northern District of Texas as indicated on previous endorsement (Court Reporter Angela O' Donnell) (jma) (Entered: 06/29/2010) |
| 08/12/2010 | 16 | MEDICAL ORDER as to Brian Rubel. So Ordered. (Signed by Magistrate Judge Paul E. Davison on 8/12/10)(fk) (Entered: 08/12/2010) |
| 08/12/2010 | | Minute Entry for proceedings held before Magistrate Judge Paul E. Davison:Bail Violation Hearing as to Brian Rubel held on 8/12/2010. Defendant present with attorney Amy Attias. AUSA: Ben Allee. The defendant was arraigned on the bail violation. A conference is scheduled before Judge Seibel on 8/19/2010 at 9:15 AM. The medical Order was issued because the defendant has requested medical attention. The defendant is remanded. (Court Reporter Courtflow) (jty) (Entered: 08/13/2010) |
| 08/12/2010 | | Set/Reset Hearings as to Brian Rubel: Status Conference set for 8/19/2010 at 09:15 AM before Judge Cathy Seibel.. (jty) (Entered: 08/13/2010) |
| 08/19/2010 | | Minute Entry for proceedings held before Judge Cathy Seibel: Bail Violation Hearing as to Brian Rubel held on 8/19/2010 Defendant is present with counsel, Amy Attias, Esq. AUSA Ben Allee, Esq. is present Court Reporter is Angela O'DonnellCourt finds defendant violated the terms of his pretrial release. The Courtrescinds his pretrial release. Exceptional circumstances no longer apply.The Court makes findings on the record. Bail is revoked. The Courtdirects the Government to communicate with the Jail and make sure thedefendant has a full medical and psychiatric evaluation and to ensure thathe gets his prescriptions daily. The Government is to provide the Courtwith a written report on or before August 24, 2010 detailing what has beendone in that regard, copy to defense counsel. If defense counsel believestreatment is still inadequate, the |

| | | Court will hold a hearing with Jail personnel. Defense counsel indicates defendant will execute the necessary release forms regarding his medical treatment. Sentencing date is adjourned to November 19, 2010 at 3:15 p.m. Defendant is Remanded pending sentencing. (Court Reporter Angela O'Donnell) (jty) (Entered: 08/19/2010) |
|---|---|---|
| 08/19/2010 | | Set/Reset Hearings as to Brian Rubel:( Sentencing set for 11/19/2010 at 03:15 PM before Judge Cathy Seibel, Set/Reset Deadlines as to Brian Rubel: ( Written Report due by 8/24/2010). (jty) (Entered: 08/19/2010) |
| 11/19/2010 | | Minute Entry for proceedings held before Judge Cathy Seibel:Sentencing held on 11/19/2010 for Brian Rubel (1) Count 2 with deft. atty. Amy M. Attias and AUSA Benjamin Allee. Deft. is sentenced to a term of imprisonment of sixty-six months on Count Two, followed by a term of Supervised Release of Life. Count one is dismissed on consent of the Govt. $100.00 Special Assessment. No Fine. Deft. is remanded. (jma) (Entered: 12/09/2010) |
| 11/23/2010 | 17 | SENTENCING MEMORANDUM by USA as to Brian Rubel. (Allee, Benjamin) (Entered: 11/23/2010) |
| 12/08/2010 | | DISMISSAL OF COUNTS on Government Motion as to Brian Rubel (1) Count 1.. (jty) (Entered: 12/09/2010) |
| 12/08/2010 | 18 | JUDGMENT #10,0269-WP as to Brian Rubel (1), Count(s) 1, Dismissed; Count (s) 2, sentenced to a term of imprisonment of sixty-six months on Count Two, followed by a term of Supervised Release of Life.Count one is dismissed on consent of the Govt. $100.00 Special Assessment. No Fine.. (Signed by Judge Cathy Seibel on 12/7/2010) The Clerks Office Has Mailed Copies. (jty) (Entered: 12/09/2010) |
| 12/08/2010 | | Judgment entered in money judgment book as #10,0269-WP as to Brian Rubel in the amount of $ 100.00, re: 18 Judgment,. (jty) (Entered: 12/09/2010) |
| 09/07/2012 | 19 | TRANSCRIPT of Proceedings as to Brian Rubel held on 11/19/2010 before Judge Cathy Seibel. Court Reporter: Angela O'Donnell. (jty) (Entered: 09/10/2012) |
| 09/14/2016 | | Minute Entry for proceedings held before Judge Cathy Seibel: Final Hearing re Revocation of Supervised Release as to Brian Rubel held on 9/14/2016. Defendant is present with counsel, Susanne Brody, Esq.AUSA Michael Maimin, Esq.Court Reporter is: Angela O'Donnell. Defendant is sworn, and 'admits to violations One, Two, Three, and Four in full satisfaction of the Petition. The Court imposes a twelve (12) month term of imprisonment on Specifications One, Two, Three, and Four, concurrent. Previously imposed term of Supervised Release is revoked, and the Court re-imposes a new term of Supervised Release of Life. Defendant is Remanded. See transcript. (lnl) (Entered: 10/04/2016) |
| 09/16/2016 | 20 | NOTICE OF APPEAL by Brian Rubel from 18 Judgment. (tp) (Entered: 09/19/2016) |
| 09/16/2016 | | Appeal Remark as to Brian Rubel re: 20 Notice of Appeal - Final Judgment. FEE WAIVED. FEDERAL DEFENDERS OF NEW YORK, INC. (tp) (Entered: 09/19/2016) |

| 09/19/2016 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Brian Rubel to US Court of Appeals re: 20 Notice of Appeal - Final Judgment. (tp) (Entered: 09/19/2016) |
|---|---|---|
| 09/19/2016 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Brian Rubel re: 20 Notice of Appeal - Final Judgment were transmitted to the U.S. Court of Appeals. (tp) (Entered: 09/19/2016) |
| 10/04/2016 | 21 | JUDGMENT IN A CRIMINAL CASE (For Revocation of Probation or Supervised Release as to Brian Rubel (1). The defendant admitted guilt to violation of conditions One, Two, Three, and Four of the term of supervision. IMPRISONMENT: Twelve (12) months on Specifications One, Two, Three, and Four, concurrent. Defendant is advised of his right to appeal. The defendant is remanded to the custody of the United States Marshal. SUPERVISED RELEASE: The Court revokes the previously imposed term of Supervise Release, and re-imposes a term of Supervised Release of Life. See SPECIAL CONDITIONS OF SUPERVISION. (Signed by Judge Cathy Seibel on 10/4/2016) (lnl) (Entered: 10/04/2016) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/20/2017 13:12:05 | | |
| **PACER Login:** | FDIe0026:2586345:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 7:09-cr-00898-CS |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

1

1     UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
2     ------------------------------------x

3     UNITED STATES of AMERICA,

4             -against-                    09 Cr. 898(CS)

5     BRIAN RUBEL,

6                     Defendant.

7     ------------------------------------x

8
                                    United States Courthouse
9                                   White Plains, New York

10                                  September 14, 2016

11
      B e f o r e:
12
                          HON. CATHY SEIBEL,
13                                District Court Judge

14    A P P E A R A N C E S:

15    MICHAEL MAIMIN
              Assistant United States Attorney
16

17

18    SUSANNE BRODY
              Attorney for Brian Rubel

19

20

21

22

23

24
      ANGELA A. O'DONNELL, RPR
25    Official Court Reporter

              Angela O'Donnell, RPR, 914-390-4025

A000012

2

1          P R O C E E D I N G S

2          THE CLERK:  United States of America against Brian

3   Rubel.

4          THE COURT:  Have a seat everyone.  Good morning,

5   Mr. Maimin.

6          MR. MAIMIN:  Good morning, your Honor.

7          THE COURT:  Mr. Gonzales and Ms. Brody and Mr. Rubel.

8          THE DEFENDANT:  Good morning, your Honor.

9          MS. BRODY:  Good morning, Judge.

10          THE COURT:  I issued a summons based on the

11   application of the probation office for violation of supervised

12   release.  There are four specifications.

13          Ms. Brody, has your client seen a copy of the

14   petition?

15          MS. BRODY:  Yes, your Honor, and we've reviewed it,

16   we reviewed it in its entirety.

17          THE COURT:  Does he understand the nature of the

18   allegations?

19          MS. BRODY:  Yes, Judge, he does.

20          THE COURT:  How would you like to proceed?

21          MS. BRODY:  My client is prepared today to admit to

22   the violations, Judge.

23          THE COURT:  And do you want to proceed to sentencing

24   today?

25          MS. BRODY:  Well, I think perhaps yes.

Angela O'Donnell, RPR, 914-390-4025

**A000013**

3

```
 1              THE COURT:  All right.  Is there any agreement with
 2   the government?
 3              MS. BRODY:  None whatsoever.
 4              THE COURT:  All right.  And he's going to admit to
 5   all four?
 6              MS. BRODY:  Yes, Judge.
 7              THE COURT:  Okay.  Let me ask Ms. Cama to place
 8   Mr. Rubel under oath.
 9              (Defendant sworn by clerk)
10              THE CLERK:  Please state your name for the record.
11              THE DEFENDANT:  Brian Joshua Rubel.
12              THE COURT:  You can have a seat, Mr. Rubel.  Do you
13   understand you're now under oath, and if you answer any of my
14   questions falsely, your false answers could later be used
15   against you in a separate prosecution for perjury or making a
16   false statement?
17              THE DEFENDANT:  I do understand.
18              THE COURT:  Ask how old are you?
19              THE DEFENDANT:  I'm 31.
20              THE COURT:  You're fluent in English?
21              THE DEFENDANT:  Yes, I am.
22              THE COURT:  Apart from the treatment that has been
23   arranged for you as part of your supervised release, have you
24   ever been treated or hospitalized for any mental illness?
25              THE DEFENDANT:  Since I've been released?
```

Angela O'Donnell, RPR, 914-390-4025

1          THE COURT: Ever.

2          THE DEFENDANT: Oh, I've been treated for, yes.

3          THE COURT: Tell me about that.

4          THE DEFENDANT: I've been treated seeing therapists,

5   psychiatrists and psychologists on basically a weekly basis

6   since the age of six for ADD, ADHD and bipolar disorder. Been

7   on medication as well for it.

8          THE COURT: Are you currently taking medication?

9          THE DEFENDANT: No, I am not.

10         THE COURT: Not taking anything.

11         THE DEFENDANT: Not taking anything.

12         THE COURT: And tell me who you're currently seeing,

13  you're seeing a psychiatrist currently?

14         THE DEFENDANT: Unfortunately not mine. I was seeing

15  the sex offender therapist, Drita Popovic I believe is her last

16  name. I've been looking for a therapist of my own; however,

17  trying to find one who takes Medicaid is being the difficult

18  issue but --

19         THE COURT: I just want to review because I thought I

20  saw that there was a psychiatrist and a psychosexual

21  evaluation, but maybe those were not ongoing things.

22         Am I right about that, Mr. Gonzalez?

23         PROBATION OFFICER GONZALEZ: Yes, your Honor. The

24  only recent evaluation was a psychiatric that was done on

25  June 13 of this year after certain events we wanted to see, get

Angela O'Donnell, RPR, 914-390-4025

**A000015**

1    a better understanding of the circumstances.

2              THE COURT:  So that was an one-time evaluation.

3              PROBATION OFFICER GONZALEZ:  Correct.  There was an

4    initial one I believe that was done prior to him commencing

5    sex-offender treatment which was about a year ago.

6              THE COURT:  And the only ongoing treatment that

7    you're aware of is this Dr. Popovic?

8              PROBATION OFFICER GONZALEZ:  Yes, your Honor.

9              THE COURT:  And is she a --

10             PROBATION OFFICER GONZALEZ:  She is sex-offender

11   therapist.

12             THE COURT:  -- psychologist?  Sorry?

13             PROBATION OFFICER GONZALEZ:  She is a sex offender

14   therapist.

15             THE COURT:  And is she a doctor?  Is she a

16   psychologist?

17             PROBATION OFFICER GONZALEZ:  She's almost to her

18   Ph.D.

19             THE COURT:  Okay.

20             PROBATION OFFICER GONZALEZ:  She right now is -- I

21   forgot what her actual credentials are.  It's more --

22             MS. BRODY:  It's an MSW?

23             PROBATION OFFICER GONZALEZ:  Licensed social worker.

24             THE COURT:  Okay.  So you're not on any medication.

25   Is your mind clear today?

                  Angela O'Donnell, RPR, 914-390-4025

**A000016**

1         THE DEFENDANT:  Yes, your Honor.

2         THE COURT:  Are you feeling all right?

3         THE DEFENDANT:  Nervous, but, yes.

4         THE COURT:  Have you had enough time to discuss the

5  allegations of violation of supervised release with your

6  lawyer?

7         THE DEFENDANT:  I believe so, yes.

8         THE COURT:  Are you satisfied with Ms. Brody's

9  representation?

10        THE DEFENDANT:  Yes, in that I am.

11        THE COURT:  All right.  First of all, I find

12  Mr. Rubel competent to proceed.

13        Do you understand that you have a right to contest

14  the charges that the probation officer has brought?

15        THE DEFENDANT:  Yes, your Honor, I do understand.

16        THE COURT:  And do you understand, if you chose to

17  contest them, you'd be entitled to a hearing at which the

18  government would have the burden of proving the charges?

19        THE DEFENDANT:  Yes, I understand.

20        THE COURT:  That would not be a full jury trial, it

21  would just be a hearing in front of me and they wouldn't have

22  to prove the charges beyond a reasonable doubt, they would just

23  have to prove to my satisfaction by a preponderance of the

24  evidence that you violated the terms of your supervised

25  release, meaning that it's more likely than not; do you

Angela O'Donnell, RPR, 914-390-4025

**A000017**

7

1   understand that?

2           THE DEFENDANT:  I understand, your Honor.

3           THE COURT:  And at that hearing and throughout this

4   entire proceeding you're entitled to the assistance of counsel;

5   do you understand that?

6           THE DEFENDANT:  I do understand.

7           THE COURT:  And do you understand, if you couldn't

8   afford counsel, counsel would be appointed to represent you for

9   free?

10          THE DEFENDANT:  I understand..

11          THE COURT:  Do you understand that, if you were

12  either to admit to any of the specifications or to be found to

13  have committed any of the specifications, I can sentence you to

14  prison for up to two years?

15          THE DEFENDANT:  I understand, your Honor.

16          THE COURT:  And do you also understand that I could

17  reimpose supervised release up to life?

18          THE DEFENDANT:  I understand that, too.

19          THE COURT:  And do you understand that the sentencing

20  guidelines range is merely advisory and it's not binding on me?

21          THE DEFENDANT:  Yes, I do understand that.

22          THE COURT:  All right.  And am I correct you wish to

23  give up the rights I've described, to a hearing and all that,

24  and admit to the specifications?

25          THE DEFENDANT:  Yes, I do.

                Angela O'Donnell, RPR, 914-390-4025

**A000018**

1        THE COURT:  All right.  Do you understand that, if

2  anyone's attempted to predict what your sentence will be, that

3  prediction could be wrong?

4        THE DEFENDANT:  I understand that.

5        THE COURT:  And do you understand, if you're unhappy

6  with the sentence, you're still going to be bound by your

7  admission and you're not going to be allowed to withdraw it?

8        THE DEFENDANT:  Yes.

9        THE COURT:  Has anyone made any promises to you or

10  offered you any inducements to get you to admit the

11  specifications?

12        THE DEFENDANT:  No, they have not.

13        THE COURT:  Has anyone threatened you or forced you

14  or coerced you to admit the specifications?

15        THE DEFENDANT:  Yes.

16        THE COURT:  Somebody has threatened you, forced you

17  or coerced you to admit the specifications?

18        THE DEFENDANT:  Yes.

19        THE COURT:  Who is that?

20        THE DEFENDANT:  Officer Gonzalez, for one of the

21  specifications, told me that, if I were to fight it, he would

22  basically make sure Victoria Baughman was penalized for it.

23        THE COURT:  Say that again.  Mr. Gonzalez told you

24  that if you didn't admit one of the specifications --

25        THE DEFENDANT:  The specification to being with -- to

A000019

9

1  being around Victoria Baughman's daughter, Emmy, that if

2  basically I didn't throw myself on the sword that Victoria

3  could possibly suffer repercussions because of it.  In fact,

4  this was actually mentioned in Victoria's presence.

5  　　　　THE COURT:  I take it, Mr. Gonzalez, you have a

6  different version of that conversation.

7  　　　　PROBATION OFFICER GONZALEZ:  Yes, your Honor.  I'm

8  not sure what Mr. Rubel's take is on this, but quite honestly,

9  we did have a three-way discussion with regards to Ms. Baughman

10 and him.  After Mr. Rubel stated that he was going to plead to

11 basically the circumstances, I, first of all, expressed to them

12 that, if the circumstances leave, this might go to a full

13 hearing if Ms. Rubel wanted to contest everything, at which

14 point Ms. Baughman would basically have to come to testify to

15 that specification, basically pertains to her.

16 　　　　There is custody battles happening with her and

17 basically Mr. Rubel said that will never come to fruition, I

18 will move forward.  And I said, well, that means you're going

19 to be falling on the sword, so to speak, because, quite

20 honestly, at this point in time, considering the nature of

21 everything, if we go to full hearing, this is going to go the

22 full distance.

23 　　　　So how Mr. Rubel or his friend actually took the

24 entire thing, I really don't know.  That's subject to

25 interpretation, your Honor.

Angela O'Donnell, RPR, 914-390-4025

**A000020**

1        THE COURT: Well, it sounds like well-founded advice

2  that it might not be good for Ms. Baughman in a custody battle

3  to be exposing her child to somebody who's a registered sex

4  offender who's not supposed to be around children. That could

5  be a bad fact for her in her custody battle.

6        THE DEFENDANT: If may I, your Honor?

7        THE COURT: The point, Mr. Rubel, is you need to

8  disregard any pressure you feel from anybody else.

9  Mr. Gonzalez is not going to retaliate in any way against

10  Ms. Baughman or against you if you choose not to admit one or

11  more of the specifications and you should only admit to it if

12  you're doing it of your own free will. Do you understand all

13  that?

14        THE DEFENDANT: I do.

15        THE COURT: Understanding all that, do you still want

16  to go forward?

17        THE DEFENDANT: Yes, I do. It wouldn't have changed

18  the decision, I just felt like I thought I had to bring it up.

19  I apologize.

20        THE COURT: All right. No, you're answering my

21  questions. That's what you're supposed to do.

22        Are you completely comfortable that there will be no

23  repercussions if you choose to contest this specification?

24        THE DEFENDANT: I'm comfortable now. Thank you, your

25  Honor.

Angela O'Donnell, RPR, 914-390-4025

1       THE COURT:  All right.  Has anyone made a promise to

2   you as to what your sentence would be?

3       THE DEFENDANT:  No.

4       THE COURT:  Is it true that from about August of last

5   year to about August of this year you failed to participate in

6   sex-offender treatment at the counseling and psychologist

7   center as directed?

8       THE DEFENDANT:  Yes, your Honor.

9       THE COURT:  And was that failure of participation

10  consisting of not showing up or were you showing up but not

11  participating sincerely?

12      THE DEFENDANT:  It was both.  There were a couple of

13  sessions that I had missed and, you know, some, when I was

14  there, Drita and I would -- very differences of opinion and

15  there were parts of it I was very resistant to.

16      THE COURT:  All right.  And is it true that on or

17  about August 8 of this year you had deliberate contact with a

18  child under 18 without the permission of your probation

19  officer?

20      THE DEFENDANT:  It was several months previous, but,

21  yes.  That was just when Drita and Officer Gonzalez had found

22  out about it, or when I said something, when I told him.

23      THE COURT:  And this was the child of this

24  Ms. Baughman?

25      THE DEFENDANT:  Yes, ma'am.

                Angela O'Donnell, RPR, 914-390-4025

1      THE COURT:  B-A-U-G-H-M-A-N?

2      THE DEFENDANT:  Yes.  B-A-U-G-H -- yes.

3      THE COURT:  And is it true that on or about June 16th

4  you loitered within 100 feet of a place primarily used by

5  children under 18, specifically a park in the 43rd Precinct?

6      THE DEFENDANT:  Yes.

7      MS. BRODY:  With explanation, Judge.

8      THE DEFENDANT:  Yes.

9      MS. BRODY:  I'll do the explanation part.  Yes, he's

10  admitting to it.  He and his friends at 10:00 o'clock, somebody

11  came off the train, they were sitting on a bench by the park,

12  it was 10:00 o'clock at night, there were no kids in the park.

13  It was 10:00 o'clock at night.  An officer came by and said,

14  whoopsie doopsie, the park is closed.  They said, we didn't

15  know the park was closed.  They got an appearance ticket.  He

16  got an A/CD.  So it wasn't a situation, and I don't want the

17  Court to misunderstand, he was not at 2:00 o'clock in the

18  afternoon when the kids get out of school lurking near a

19  playground where children were on the swings.  He and other

20  adults were on a bench at the park entrance at 10:00 o'clock at

21  night.

22      THE COURT:  All right.  But you're not putting the

23  government to its proof.

24      MS. BRODY:  No.  Because he got a ticket for it and

25  he got an A/CD, so, I mean, there's nowhere to go with it,

Angela O'Donnell, RPR, 914-390-4025

**A000023**

1    Judge.

2              THE COURT:  And is it true, Mr. Rubel, on or about

3    March 28 of this year, you failed to truthfully answer

4    inquiries of the probation officer in that you, when he asked

5    you about your use of Facebook, you didn't tell the truth?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  When you did these things, did you know

8    that they were violations of your supervised release?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Ms. Brody, do you know of any reason why

11   your client should not be permitted to admit these violations?

12             MS. BRODY:  No, Judge.

13             THE COURT:  Any additional questions you want me to

14   ask?

15             MS. BRODY:  No, Judge.

16             THE COURT:  Mr. Maiman, any additional questions you

17   want me to ask?

18             MR. MAIMIN:  No, your Honor.

19             THE COURT:  Mr. Rubel, because you acknowledge that

20   you violated your terms of supervised release as set forth in

21   the specifications one through four, because I'm satisfied you

22   know your rights, including your right to a hearing and you're

23   aware of the consequences of your admission, including the

24   sentence which may be imposed, and because I find you are

25   knowingly and voluntarily admitting to the specifications, I

```
1    accept your admissions and we'll enter judgment on
2    specifications one through four.
3              You want to go ahead with sentencing, Ms. Brody?
4              MS. BRODY:  Sure.
5              THE COURT:  Does the government wish to be heard with
6    respect to sentencing or the probation officer?
7              MR. MAIMIN:  Yes, your Honor, and I'll speak first
8    and then, if Mr. Gonzalez wants to speak, obviously I'll sit
9    down and let him stand.
10             Your Honor, as your Honor knows, this isn't my case
11   so I don't have a history with Mr. Rubel, but simply from what
12   I've read, Mr. Rubel's actions have been troubling at the very
13   least.  He seems to have a long, strong pattern of effectively
14   refusing to accept that he is under supervision.  This wasn't
15   one minor incident by mistake, this is a real attitudinal issue
16   where Mr. Rubel seems to, no pun intended, rebel against the
17   probation officer and the trust this Court put in him time and
18   time again.  It started out while he was in the residential
19   re-entry center when he continually broke the rules even though
20   being told that he was doing so.  He came out, he started up
21   multiple relationships, one of which put him in contact with a
22   young child, lied to the probation officer about that, lied to
23   the probation officer about his use of social media, had
24   repeated problems with treatment which is effectively part of
25   this Court's trust that he would make -- take affirmative steps
```

A000025

1   to trying to re-enter society and become a functioning member

2   of society.  He has decided not to do so.

3           Reading -- the probation report is very, very

4   troubling, because every step of the way he's given another

5   opportunity and every step of the way he thumbs his nose at

6   that opportunity.  In doing so, he's thumbing his nose at this

7   Court, which of course gave him a below guidelines sentence to

8   start, thus putting particular trust in Mr. Rubel.

9           In light of all this, I know that Mr. Gonzalez has

10  asked for an above-guideline sentence, and I don't think that

11  that would necessarily be unreasonable in this case.

12          Also, Ms. Brody has informed me that she is going to

13  ask that, if this Court impose an incarceratory sentence, that

14  Mr. Rubel be given time to surrender.  While it is true that

15  Mr. Rubel did show up today on his own volition following the

16  issuance of a summons, that is, he didn't have to be brought in

17  by the marshals, of course the burden is on him to show by

18  clear and convincing evidence he would show up in the future,

19  not be a danger to the community, and both of those are

20  problematic considering his long history of virtually non-stop

21  violation of the terms of his supervised release and refusing

22  to work with either Mr. Gonzalez or work effectively with

23  Ms. Popovic.  And, accordingly, we would oppose any delayed

24  surrender as well.

25          THE COURT:  Thank you, Mr. Maiman.

                Angela O'Donnell, RPR, 914-390-4025

**A000026**

1          Ms. Brody.

2          MS. BRODY:  I'm sorry, I thought Probation Officer --

3          THE COURT:  I'm sorry, you're absolutely right.

4          Mr. Gonzalez, did you want to add anything?

5          PROBATION OFFICER GONZALEZ:  Yes, your Honor.  I

6    guess, as the report pretty much indicates, I've given a

7    profound amount of latitude to Mr. Rubel.  The treatment

8    provider really she has some concerns but I still wanted to

9    continue attempting to address his behavior with treatment,

10   but -- and I gave him a lot of opportunity.  So, therefore, at

11   the same time, while giving him an opportunity to basically

12   better himself and to actually straighten himself out, instead

13   he has, in essence, become even worse and worse.  It wasn't

14   without giving him warnings here and there to straighten

15   himself out.

16          So, that's, your Honor, that's why I based my

17   recommendation with the guidelines due to those issues that

18   Mr. Rubel, even by his own words, pushes the envelope even when

19   given the opportunity to try to get everything straight for

20   lack of a better word, your Honor.  There is always an issue of

21   accountability.  There's always an issue of deception and

22   manipulation which his psychiatrist also said as well in the

23   recent violation that was done for him, your Honor.

24          Thank you.

25          THE COURT:  Thank you, Mr. Gonzalez.

Angela O'Donnell, RPR, 914-390-4025

**A000027**

1       Ms. Brody.

2       MS. BRODY:  Your Honor, if Brian, God forbid, was a

3  paraplegic, I don't think we could jail him for not walking.

4  We've got a situation here where we have a young man, a very

5  young man who from the time he's three years old has been in

6  therapy.  This is not someone who you can say, here are the

7  rules and he says, okay, I get it, I don't have a problem.

8  This is someone whose problems go so far beyond anything that

9  is even written here.  These are the symptoms.  These are not

10  the problems.

11       Brian, we had a delightful chat in my office this

12  morning.  When I was explaining to Brain that we are aware that

13  he does have emotional problems, he's had problems since he's a

14  child; however, the decision to go to jail or not to go to jail

15  is really his, it's not even the Court's.  The Court can decide

16  when and how long, but Brian does need to understand that he is

17  on supervised release and he got to supervised release

18  certainly of his own accord; however, as an adult at 31, he has

19  to start making the right decisions.  Now he is on lifetime

20  supervised release.  What does that mean?  That means I imagine

21  the Court may, in fact, give him some jail time right now.  But

22  I'm looking past today, Judge, because I really don't want

23  Brian in my office every year, not that we didn't have a lovely

24  chat, but the possibility is there.

25       Probation's recommending a year.  To what end?  We're

Angela O'Donnell, RPR, 914-390-4025

**A000028**

1    warehousing someone who has severe, extended, lifetime,

2    emotionally crippling illness. Yes, he gives kickback. Yes

3    he's got attitude. Yes, he doesn't follow the rules. This is

4    all true. But many, many times my office has been in front of

5    this Court where people on supervised release are using drugs,

6    are committing new crimes, I'm not talking about a show-up

7    violation on sitting on a park bench. They don't get 12

8    months. They don't get that kind of time. Warehousing him

9    exacerbates the problem, doesn't help the problem. So the

10   question for the Court becomes what term of incarceration would

11   be sufficient without being greater than necessary.

12          How many days, how many months should Brian sit in

13   jail for the wake-up call that when he comes out this time, if

14   he continues this pattern, he's going back in for a longer

15   period of time? Certainly 12 months is excessive. There's a

16   guideline range. Three months is enough time for Brian to sit

17   in jail for three months every day and think, okay, I can be

18   Brian and give kickback, I can lie to my probation officer and

19   I can come right back here or, or maybe I don't want to come

20   back here, so maybe when I get out this time, this time, maybe

21   I'll listen to someone, maybe I'll take direction. But it

22   would seem at 31 years old three months on this violation would

23   be enough time.

24          Additionally, your Honor, he's got all this stuff

25   that's got to get moved into storage. His father is here, his

A000029

```
 1   father can't move all this stuff into storage.  The only reason

 2   that we raised the surrender with the government and with

 3   probation was to allow Brian the assist his father in getting

 4   his stuff into storage because it did seem likely this Court

 5   might impose an incarceratory -- send him to jail.

 6            THE COURT:  I want to just understand that.  What

 7   stuff and why can't it stay where it is?

 8            MS. BRODY:  Well, because if he goes to jail, who's

 9   going to pay the rent?  I mean --

10            THE COURT:  Oh, he has his own apartment.  I see.

11            MS. BRODY:  So, that's why it's all got to be moved

12   out.  So, this is Wednesday, I was actually thinking of a

13   Friday show-up, not any kind of extended period of time.  Just

14   go home this afternoon, tomorrow get a storage shed and help

15   his father move all the stuff in and he could be back here

16   Friday morning by 9:00 o'clock.  I mean, that would seem fair.

17            THE COURT:  Thank you, Ms. Brody.  I think your

18   client's father wants your attention.

19            FATHER:  May I address the, Judge?

20            MS. BRODY:  No.

21            THE COURT:  No.

22            MS. BRODY:  No.

23            THE COURT:  Mr. Rubel, if there's anything you'd like

24   to say before I sentence you, I'll hear you now.

25            THE DEFENDANT:  I -- I know I've screwed up with
```

```
1   this, with probation.  As Ms. Brody said, going back and forth,
2   it's the wake-up call, and I know it's the words and actions, I
3   understand that.  It's -- nothing I could say right now could
4   say that, yeah, I've woken up, would only be proving it through
5   the future.
6          The -- I've basically came prepared for any sentence,
7   for whatever it is that you decided was fair.  The only thing
8   I've actually asked for, the only thing I personally requested
9   was the two days to help my father and to pack up my stuff and
10  then to self-surrender either to here, MDC Brooklyn or back
11  down to Virginia, wherever it is I'm going to be incarcerated
12  for the violation, not for me because I want two days to hang
13  out with friends and do whatever, but so that way I can take
14  care of the responsibilities that I need to take care of before
15  this happens.
16         Honestly, through all this, the one thing that I
17  regretted more than anything else was that these screw-ups
18  didn't just affect me.  I happened to tell my mother that I was
19  being violated, her reaction, and same thing with my father,
20  and then the potential for Victoria to have been affected by
21  it, that between all of it just -- I guess I finally -- I guess
22  I've realized, I mean, again, it's words before actions, but
23  that I'm not by myself in this.  I'm not in a vacuum.  I'm not
24  doing things in a vacuum.  I -- my actions are affecting those
25  that I care about and those that I love.  And that has always
```

Angela O'Donnell, RPR, 914-390-4025

**A000031**

1    been the last thing I've ever wanted to do.

2          I got a nickname years ago tattooed on my right arm,

3    Lord protector forever.  I'm always willing to do whatever it

4    takes to protect my friends and family and those I care about,

5    and seeing the reactions of people when I told them that I was

6    being violated and would be going back to prison made me

7    realize how much I was hurting them myself.  And beyond

8    anything else, that hurt me most.

9          Like I said, that's really about it.  I can't

10    mitigate or explain away my violations.  I'm not going to.

11    They're there.  They happened.  I screwed up.  I'm definitely

12    not going to sit there and say that it didn't happen or

13    anything like that.  I've admitted that.  I guess I just --

14    this violation just woke me up when I saw peoples' reactions.

15          Again, your call, obviously, I just want to prove

16    myself going forward.  That's really it.

17          THE COURT:  Thank you, Mr. Rubel.  I'm sorry, were

18    you not done?

19          THE DEFENDANT:  No, I am.  Sorry.

20          THE COURT:  Okay.  You can have a seat.

21          The policy statement in the sentencing guidelines,

22    which is not binding, is three-to-nine months.  Whether to

23    sentence within, above or below that range turns on the 3553(a)

24    factors.  First are the nature and circumstances of the

25    offense, and by that I mean the violations of supervised

1    release, not the underlying child porn offense.

2         Ms. Brody is correct that these don't involve new

3    crimes, they don't involve violence, they don't involve

4    physical harm to third persons.  That said, they are serious

5    and troubling violations.  This is a defendant who talked the

6    talk when I sentenced him last time about understanding that he

7    needs help, and yet, not only did he not go into his

8    sex-offender treatment with his heart in it, he was belligerent

9    and inappropriate and was warned multiple times and continued

10   to be aggressive to the point where his therapist felt

11   physically threatened and he made some very inappropriate

12   comments like he was going to slit somebody's throat.  And

13   according to the therapist, maintained that there's nothing

14   wrong with a 12 or 13-year-old having sex with an older person,

15   it's just our society that makes it seem wrong, which undercuts

16   what he told me at the time of his sentencing, which I'll

17   review in a moment.

18        He also seems to have struck up a friendship with

19   somebody with a young daughter and hung around with this friend

20   and not clear whether it was a girlfriend or not since the

21   defendant seemed to have a girlfriend of 19, but he new

22   perfectly well he wasn't allowed to be with a child and that is

23   alarming.

24        I'm not particularly moved by the park thing, because

25   I doubt there were unaccompanied children there at 10:00 p.m.;

**A000033**

1  however, the defendant certainly knew he's not supposed to be

2  in parks. I am more moved by the lies to probation, not only

3  about Ms. Baughman's daughter but about Facebook, which the

4  defendant knew he was not supposed to be on and which

5  apparently he was on quite a bit. And perhaps what's most

6  troubling about this whole series of offenses is that it is a

7  continuation of the manipulative behavior that Mr. Rubel has

8  displayed since the beginning of this case. And that brings me

9  to the second factor, which is the history and characteristics

10  of the defendant.

11        I think Mr. Rubel, to be honest, is full of it. What

12  he said today is very similar to what he said when I sentenced

13  him. Because, you know, I take notes. And what Mr. Rubel told

14  me in November of 2010 is I'm in jail because I screwed up and

15  I kept screwing up. I did stupid things, but I finally

16  realized that other people are hurt by what I looked at,

17  meaning the child porn, and I'm deeply ashamed, and I want to

18  fix what I cause, and I've spent my life helping people and I

19  need to work on myself to become a normal member of society. I

20  always thought I could get a free ride and I finally realize

21  that's wrong. I feel horrible for what I put my family and

22  friends through. I just screwed up, but I've learned and I've

23  realized in jail, I realized I screwed up and I want to change

24  and be better, change my life for the better.

25        That may have been sincere when it was said, but I

A000034

1  don't think so.  I think it was part of the manipulation.  But,
2  in any event, Mr. Rubel certainly did not follow through.
3       You know, Ms. Brody is correct that he has genuine
4  mental health problems.  She may even be correct that he's
5  never going to be able to comply and his whole life is going to
6  be a cycle of going to jail, getting out, violating supervised
7  release and going back in and in one sense, you know, that does
8  seem ridiculous.  On the other hand, I don't know what the
9  alternative is.  We have to protect the public, and Mr. Rubel
10 has some very dangerous ideas and cannot be trusted and, you
11 know, short of washing our hands and saying, okay, go out and
12 do whatever you like, I don't know what tools I have to protect
13 the public from somebody who won't accept the therapy that is
14 the only thing that might help him other than segregating him
15 from the public.
16      I won't repeat what the government said, but it is
17 true that Mr. Rubel at every opportunity pushes the envelope as
18 the probation officer quoted him as saying and has been given
19 chance after chance and frankly has used up whatever patience
20 and goodwill he may have had.
21      I have to consider the need for the sentence imposed
22 to advance some of the purposes of sentencing, particularly
23 here, promoting respect for the law, including the obligations
24 of supervised release and protecting the public from further
25 crimes, because I have zero confidence that Mr. Rubel, given

1    the opportunity, would refrain from either repeating the

2    offense of conviction or doing something worse.

3             I've considered the guidelines, I've considered all

4    the 3553(a) factors, even the ones I haven't specifically

5    discussed and, honestly, I think a sentence longer than what

6    probation recommended would not be unreasonable, but my job is

7    to impose the sentence that's sufficient but not greater than

8    necessary to serve the purposes of sentencing, and to me that

9    is what probation has recommended, which is 12 months, not 12

10   months and a day, 12 months, mostly because Mr. Rubel is so

11   clearly, despite him talking the talk, he is so clearly not

12   amenable to treatment and, frankly, hasn't -- has complied

13   with -- has failed to comply with many of the most important

14   restrictions of supervised release, and as far as I can tell

15   and his therapists have told me, has made no progress.

16            And I'm going to -- so I'm revoking previously

17   imposed term of supervised release, I'm imposing 12 months

18   imprisonment and then I am imposing a new lifetime term of

19   supervised release.  And this may keep happening.  Mr. Rubel

20   and I may see each other every couple of years.  I sure hope

21   not.  I don't have a lot of confidence that what Mr. Rubel said

22   today is anymore reliable than what he said last time but one

23   can always hope.

24            And I am not going to allow self-surrender.  If

25   there's anything of value in that apartment, maybe the friends

Angela O'Donnell, RPR, 914-390-4025

**A000036**

1    that Mr. Rubel referred to or his mother can help his father,

2    or maybe his father will just take whatever is of value and let

3    the landlord toss out the rest. But the one thing I am

4    completely convinced of is that Mr. Rubel is not to be trusted

5    and the privilege of self-surrender should not be accorded to

6    him even though I recognize he did surrender here today

7    understanding that he would probably have a sentence imposed

8    that included jail time.

9            Does either lawyer know of any legal reason why the

10   sentence I've described should not be imposed?

11           MR. MAIMIN:  No.  Although, just to clarify, the new

12   lifetime term of supervised release has all of the conditions

13   and special conditions of the prior term?

14           THE COURT:  It does.  And I'm never sure whether I

15   can just incorporate them or whether I have to say them, so let

16   me torment everybody by saying what they are.

17           First, the mandatory conditions.  The defendant will

18   not commit another federal, state or local crime; the defendant

19   will not unlawfully possess a controlled substance; the

20   defendant shall not possess a firearm or destructive device;

21   the defendant shall cooperate in the collection of DNA as

22   directed by the probation officer; and, the defendant will

23   comply with the requirements of the Sex Offender Notification

24   Act.

25           I'm going to suspend the mandatory drug testing

Angela O'Donnell, RPR, 914-390-4025

**A000037**

1    condition because I find the defendant poses a low risk of

2    future substance abuse.

3            I'm imposing the standard conditions of supervision,

4    1 to 13, along with the following special conditions.  Looks

5    like last time I imposed a drug-testing condition, but I think

6    that was a mistake.

7            Do we need that, Mr. Gonzalez?

8            PROBATION OFFICER GONZALEZ:  Yes, your Honor.  He

9    does have a history of use.  But just simply to be as

10   circumspect as possible, we usually -- we'll test him for a

11   specific amount of time to vet him then we would stop after a

12   certain timeframe.

13           THE COURT:  I think what I did is, the mistake I made

14   is I checked the box that said the drug-testing condition is

15   suspended based on my determination that the defendant poses a

16   low risk of future substance abuse.  I should have changed it

17   to read, based on the Court's determination that -- based on

18   the Court's imposition of a special condition requiring drug

19   treatment and testing.

20           So I withdraw what I said about suspending drug

21   testing because of low risk, I'm suspending the mandatory drug

22   testing condition and instead imposing a special condition

23   requiring that the defendant participate in a substance abuse

24   treatment program at the direction of the probation office

25   which may include testing to determine whether the defendant

1  has reverted to using drugs or alcohol.  I authorize the

2  release of available drug treatment evaluations and reports to

3  the provider as approved by probation.  The defendant will be

4  required to contribute to the cost of services rendered in an

5  amount determined by probation based on ability to pay or

6  availability of third-party payment.

7        The defendant shall undergo a sex offense specific

8  evaluation and participate in a sex-offender treatment and/or

9  mental-health-treatment program approved by the probation

10 officer.

11       The defendant shall abide by all rules, requirements

12 and conditions of the sex offender treatment program, including

13 submission to polygraph testing.  The defendant shall waive his

14 right of confidentiality in any records for mental health

15 assessment and treatment imposed as a consequence of this

16 judgment to allow the probation officer to review the

17 defendant's course of treatment and progress with the treatment

18 provider.  The defendant will be required to contribute to the

19 cost of services rendered in an amount approved by the

20 probation officer based on ability to pay or availability of

21 third-party payment.  And in both cases I authorize the -- I'm

22 sorry, and in connection with the sex-offender treatment, I

23 also authorize the release of available evaluations and

24 reports.

25       For the first five years of supervised release, the

Angela O'Donnell, RPR, 914-390-4025

**A000039**

1   defendant shall not have deliberate contact with any child

2   under 18 without approval of probation and shall not loiter

3   within 100 feet of schoolyards, playground, arcades or other

4   places primarily used by children under 18 without permission

5   of probation.

6          I realize that the defendant is six years out from

7   when I imposed that, but I think the precaution remains

8   worthwhile and I reimpose it.

9          And, in addition, the defendant will participate in

10  the computer internet monitoring program approved by the

11  probation office.  The defendant must provide the probation

12  office advance notification of any computers, automated

13  services or devices connected to the internet that will be used

14  during the term of supervision.  Let me say that again.

15         The defendant must provide the probation office

16  advanced notification of any computers, automated services or

17  devices that will be used during the term of supervision that

18  can access the internet.  The probation office is authorized to

19  install any application as necessary to survey all activity on

20  any such computers or devices owned or operated by the

21  defendant.  The defendant may be required to pay the cost of

22  monitoring services at the monthly rate provided by the

23  probation office.  Probation office will be notified by

24  electronic transmission of impermissible or suspicious activity

25  or communications consistent with the monitoring policy in

1   effect as triggered by such impermissible or suspicious

2   activity.  The defendant shall consent to and cooperate with

3   unannounced examinations of any equipment, computer equipment

4   or device he owns or uses, which examination shall include but

5   is not limited to retrieval and copying of all data from the

6   computer, the device, storage media or any internal or external

7   peripherals and may involve the removal of such equipment for

8   the purpose of conducting a more thorough inspection elsewhere.

9        Any employer who employs to defendant in a position

10   in which he will have computer access at work is to be notified

11   of this condition.

12        The defendant shall submit his person, property,

13   residence, vehicle, papers, computer, electronic devices and

14   effects to search at any time with or without a warrant by a

15   probation officer with reasonable suspicion that contraband or

16   evidence of a violation of the conditions of release may be

17   found.  The search must be conducted at a reasonable time and

18   in a reasonable manner.  Failure to submit to search may be

19   grounds for revocation.  The defendant is to report to the

20   nearest probation office within 72 hours of release of custody.

21   I recommend the defendant be supervised in his district of

22   residence.

23        With that, is anybody aware of any legal reason why

24   the sentence I described should not be imposed?

25        MR. MAIMIN:  No legal reason.  Just to make sure

Angela O'Donnell, RPR, 914-390-4025

**A000041**

```
 1    we're absolutely clear, when your Honor talks about the first

 2    five years of supervised release, there's no credit for prior

 3    time, it's to start at the new term of supervised release?

 4              THE COURT:  Correct.

 5              All right.  The sentence I've described --

 6              MS. BRODY:  Judge.

 7              THE COURT:  Yes.

 8              MS. BRODY:  I do have a legal question.

 9              THE COURT:  Yes.

10              MS. BRODY:  Not too long ago, I'm trying to recall

11    the name of the case, it was in this circuit, I believe Judge

12    Parker may have written the decision, where a sex offender was

13    required by the district court on significant relationships and

14    what was a significant relationship, and the circuit found that

15    the district court could not impose, or probation could not

16    impose certain restrictions in determination of what as was a

17    significant relationship.

18              Here's what I am not sure about.  My client will get

19    out of jail, he'll be 32 years old.  It is entirely possible he

20    will enter an adult relationship with a woman who may have

21    children and they would obviously be -- well, not obviously,

22    chances are they're going to be under 18.  If this woman

23    hypothetically could be a widow or her husband could live

24    across country, she's got sole custody of the child, I'm not

25    sure that the imposition of a requirement that he essentially
```

Angela O'Donnell, RPR, 914-390-4025

**A000042**

1    not be permitted to have a relationship with a grown woman if

2    she's aware of his sex-offender status if there's a child

3    there.  Certainly we have heard and there are often conditions

4    that he's not to be permitted, sex offenders are not to be

5    permitted alone with a child, but I'm not aware of any -- I

6    don't even know if it's been litigated that he can't be near a

7    child with adult supervision.  And I don't know where to go

8    with that Judge.  I'm just not sure that would hold.

9          THE COURT:  I certainly haven't said he can't have a

10   relationship.  All I've said is he can't be around kids for the

11   first five years without permission from probation.  If he were

12   to be in a healthy adult relationship with somebody with whom

13   he wanted to cohabit, for example, I think probation could look

14   into the circumstances and make a determination as to whether

15   they thought that presented any danger to the child.  In the

16   meantime, he could certainly have a relationship with an adult

17   without her child being present.

18         The fact that Mr. Rubel says he thinks it's okay to

19   have sex with 12-years-olds and his resistance to treatment and

20   the nature of the underlying offense, showing obviously an

21   interest in sexual exploitation of children, I don't know what

22   case you're referring to and I don't know offhand if there's

23   anything in it that undercuts my instinct but my instinct is

24   that under these facts and circumstances, and given that this

25   is a hypothetical concern, I think the condition is

Angela O'Donnell, RPR, 914-390-4025

**A000043**

1    appropriate.

2          My memory going back is I think why I confined it to

3    five years is because -- was based on a similar argument as

4    opposed to making it a condition forever.  But it seems to me,

5    look, we're not naive, we all know what has been known to

6    happen.  I'm not saying it's going to happen with Mr. Rubel,

7    but we have certainly all heard of sex offenders who strike up

8    a relationship with an adult and build trust with that adult

9    with the goal of exploiting that adult's child and I think

10   Mr. Rubel needs a good five years of work before I could trust

11   that he was not doing that.  So I'm going to adhere to my

12   decision, and if the Circuit tells me I can't do it, we'll do

13   it over.  But this is an individual who I think we have every

14   reason to believe cannot be trusted to refrain from acting on

15   the impulses which he thinks are okay notwithstanding what

16   he's, what he says before he's sentenced.

17         So the sentence I've described is the sentence I

18   impose, it's the sentence I find sufficient but not greater

19   than necessary to serve the purposes of sentencing.

20         MR. MAIMIN:  And, your Honor, just because I suspect

21   from how Ms. Brody put that that there's going to be an appeal

22   and there may be an appeal of that condition, I'd just like to

23   put on the record that my understanding from probation as to

24   additional reasons why it's an appropriate condition include

25   the fact that Mr. Rubel lied to probation about having had

1    contact with the child claiming that the child was not at home

2    when he was, which turned out to be false.  And, in fact, the

3    eight-year-old daughter was there.  And, also, he claimed that

4    he was not a romantic relationship with Ms. Baughman and later

5    admitted that, in fact, he had been engaging in intercourse

6    with her and his girlfriend, thus, making it a more intimate

7    and exploitive relationship.  That, again, just reinforces the

8    concerns about him being around children of friends or romantic

9    partners.

10            THE COURT:  Yes, that material is in the petition.

11            Mr. Rubel, you do have the right to appeal, to the

12   extent you've not given up that right through your admissions

13   today.  For example, you could appeal the conditions imposed as

14   part of the sentence.  If you're unable to pay the cost of

15   appeal, you can apply for permission to appeal without paying.

16   Any notice of appeal must be filed within 14 days of the entry

17   of the judgment of conviction, and Ms. Brody will assist you

18   with that.

19            MS. BRODY:  Judge, just so I'm clear, based on the

20   wording of this restriction, would my client be prohibited from

21   riding the subway?  I want it --

22            THE COURT:  I don't think the subway is primarily

23   used by children.

24            MS. BRODY:  But there are certainly children on the

25   subway.  They take it every day to school.  They take it home

1  to school.  The bus.  The subway.

2         THE COURT:  There are two conditions, I don't know

3  which one you're referring.  One is he's not to have

4  intentional contact -- let me find the right wording.

5         MR. MAIMIN:  I believe it's deliberate contact with

6  any child under 18 years of age unless approved by the

7  probation officer.

8         THE COURT:  That means he can't go out looking to

9  spend time with someone under 18.  It doesn't mean that, if

10 he's walking down the street and a child passes him in the

11 opposite direction or gets on the subway car he's riding in,

12 that it's a violation because that wouldn't be deliberate

13 contact.  Schoolyards, playgrounds, arcades, other places

14 primarily used by children under the age of 18 it seems to me

15 would include parks, perhaps Chuck E. Cheese and the McDonald's

16 play place, but it would not include a subway car.

17        All right.  Thank you all.

18        MR. MAIMIN:  Thank you, your Honor.

19        PROBATION OFFICER GONZALEZ:  Thank you, your Honor.

20        THE COURT:  If Mr. Rubel has anything he wants to

21 give his father before the marshals take him, he should do so.

22        THE DEFENDANT:  Thank you, ma'am.  Thank you, your

23 Honor.  (Proceedings concluded)

24 CERTIFICATE:  I hereby certify that the foregoing is a true and
   accurate transcript, to the best of my skill and ability, from
25 my stenographic notes of this proceeding.
   Angela A. O'Donnell, RPR, Official Court Reporter, USDC, SDNY

         Angela O'Donnell, RPR, 914-390-4025

**A000046**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA  :
           :
  -v.-        :  09 Cr. 898 (CS)
           :
BRIAN RUBEL,      :
           :
     Defendant.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S SENTENCING MEMORANDUM

PREET BHARARA
United States Attorney for the Southern
District of New York

BENJAMIN ALLEE
Assistant United States Attorney
 - Of Counsel -

A000047

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA  :
              :
  -v.-          :   09 Cr. 898 (CS)
              :
BRIAN RUBEL,      :
              :
      Defendant.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S SENTENCING MEMORANDUM

The Government respectfully submits this memorandum in connection with the

defendant's sentencing scheduled for November 19, 2010. For the reasons set forth below, a

sentence within the applicable Sentencing Guidelines range of 78 to 97 months' imprisonment

set forth in the Presentence Investigation Report ("PSR") would be sufficient but not greater than

necessary to comply with goals of sentencing set forth in Title 18, United States Code, Section

3553(a).

## BACKGROUND

On June 4, 2009, during the course of an ongoing investigation, Brian Rubel was

interviewed by law enforcement agents about child pornography. (PSR ¶ 7). Rubel admitted that

he had downloaded child pornography and stored files on two computers. (PSR ¶ 7(a), (c)). The

following day Rubel was arrested, and law enforcement agents thereafter searched Rubel's

computers pursuant to a search warrant issued by United States Magistrate Judge Paul E.

Davison.

Rubel possessed 46 videos and 80 photographs depicting child pornography.

(PSR ¶ 12). He had downloaded the images from September 2007 through April 2009 and

maintained them on his computers. (PSR ¶ 2, 7, 11). The images included multiple depictions,

including graphic videos, of children engaged in sexual behavior. (PSR ¶ 10). For example, Rubel possessed the following:

> (1) an approximately two-minute video of an approximately five-year-old girl having sexual intercourse with an adult man;
> (2) an approximately one-minute video of an approximately eight-year-old girl masturbating;
> (3) an approximately thirty-second video of an approximately eight-year-old girl naked with her legs spread open;
> (4) an approximately two-minute video of an approximately ten-year-old girl having sexual intercourse with an adult man; and
> (5) an approximately one-and-three-quarter minutes video of two approximately eleven-year-old children, a boy and a girl, having sexual intercourse with each other.

(PSR ¶ 10).

Rubel was charged in a complaint with receipt and possession of child pornography, in violation of Title 18, United States Code, Sections 2252A(a)(2)(b), (a)(5)(B), (b)(1), and (b)(2) (the "Complaint"). Following Rubel's arrest, on June 5, 2009, Magistrate Judge Davison released Rubel on conditions of bail, which conditions included home confinement, electronic monitoring, and refraining from drug use.

On September 22, 2009, a grand jury in the Southern District of New York returned Indictment 09 Cr. 898 (CS), charging Rubel with the same violations charged in the Complaint (the "Indictment"). On March 15, 2010, Rubel pleaded guilty to Count Two of the Indictment, charging Rubel with possession of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B) and (b)(2).

Rubel pleaded guilty pursuant to a plea agreement (the "Plea Agreement"). As part of the Plea Agreement, Rubel stipulated that the applicable Guidelines range is 78 to 97 months' imprisonment. (PSR ¶ 5(i)). The applicable Guidelines range was based on, among

A000049

other things, the following sentencing enhancements pursuant to United States Sentencing Guidelines ("U.S.S.G.") Section 2G2.2: (1) a two-level enhancement because the images Rubel possessed involved pre-pubescent minors; (2) a four-level enhancement because the images Rubel possessed portrayed sadistic or masochistic conduct or other depictions of violence; (3) a two-level enhancement because Rubel used a computer to possess the images; and (4) a five-level enhancement because Rubel possessed 600 or more images (calculated using the Guidelines' ratio of 75 images per video). See U.S.S.G. §§ 2G2.2(b)(2), (b)(4), (b)(6), (b)(7)(D).

Following his guilty plea, on March 15, 2010, the Court continued Rubel's bail status pending sentencing, with the modification that Rubel attend Sex Anonymous meetings twice a week. The Court found that there were exceptional reasons why the defendant's detention pending sentence would not be appropriate, see 18 U.S.C. § 3143, 3145(c), because the defendant described that he was taking medication as part of psychiatric treatment that he could not receive while in custody. The Court also ordered that if an appropriate inpatient treatment program was found, Rubel should be admitted.

On May 11, May 20, May 24, June 1 and June 7, 2010, the defendant tested positive for the use of marijuana, in violation of the terms of bail. (PSR ¶ 48). In early June, the defendant also obtained admission into a six-week inpatient program for sex addiction treatment: Keystone Center, near Philadelphia. (PSR ¶ 44). On June 7, 2010, despite Rubel's having violated the terms of bail, the Court permitted Rubel to attend the inpatient program at Keystone.

Upon admission to Keystone, the defendant repeatedly violated rules of the program. On June 22, 2010, shortly after he began the program at Keystone, the defendant was warned by authorities at Keystone that further rules violations would result in expulsion. The

3

defendant then further violated the rules – including failing to take prescribed medication – and on June 27, 2010, the defendant was discharged from Keystone. (PSR ¶ 44).

At the ensuing Court appearance on June 28, 2010, the defendant requested permission to attend a second inpatient treatment program, for three months, at the Sante Center in Argyle, Texas. In making the request, the defendant argued that the program at the Sante Center, which regularly admitted individuals with Attention Deficit Hyperactivity Disorder ("ADHD"), was more suitable than that at Keystone, which was primarily for sex addiction treatment. The Court granted the defendant's request, permitting him to attend inpatient treatment at the Sante Center. (PSR ¶ 45).

On July 26, 2010, shortly after beginning treatment, the defendant was discharged from the Sante Center because he had sexual intercourse with a female patient with a borderline IQ. The defendant also frequently interrupted and made offensive remarks to others. Based on these violations of the defendant's bail conditions, the Court issued a warrant for the defendant's arrest. The defendant was thereafter arrested and transferred in custody to New York, where he remains in custody pending sentencing.

In the PSR, the United States Probation Office concluded that the defendant's Guidelines Range is 78 to 97 months, based on the same Guidelines analysis as that set forth in the Plea Agreement. (PSR ¶¶ 16-33, 66). The Probation Office also requested, and the Court ordered, that the defendant undergo a psychosexual evaluation. The evaluation was performed by Dr. Kenneth J. Lau and submitted to the Court on October 18, 2010, and is discussed in the PSR and below. (PSR ¶ 47). The Probation Office recommends a sentence of 78 months' imprisonment. (PSR at 15).

A000051

## ARGUMENT

### I.    A Guidelines Sentence Would Be Sufficient But Not Greater Than Necessary

Section 3553(a) provides that the sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established [in the Guidelines];
> (5) any pertinent policy statement [issued by the Sentencing Commission];
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The defendant, who has been in custody less than four months, argues for a sentence of time served, with defense counsel stating that "Brian Rubel has spent enough time in jail." (Def. Br., at 3).  Such a sentence of a fraction of the Guidelines range, however, would fail to achieve the goals of sentencing under Section 3553(a).  The balance of the 3553(a) factors supports a Guidelines sentence, for several reasons.

First, in order to reflect the seriousness of the offense, promote respect for the law, and provide just punishment and adequate deterrence, see 18 U.S.C. § 3553(a)(2)(A), the defendant's sentence must account for the harm that images of child pornography inflict upon the

5

victims and their families.  See United States v. Shutic, 274 F.3d 1123, 1126 (7th Cir. 2001);

United States v. Sherman, 268 F.3d 539, 547-48 (7th Cir. 2001).  As the Sherman Court noted,

"child pornography directly victimizes the children portrayed by violating their right to privacy."

Id.  And as the court noted in Shutic, "children . . . suffer profound emotional repercussions from

a fear of exposure, and the tension of keeping the abuse a secret . . . . [c]oncern for the welfare of

the children who are used to create pornography is part of the public concern over child

pornography."  Shutic, 274 F.3d at 1126. (citations omitted); see also United States v. Norris,

159 F.3d 926, 929-30 (5th Cir. 1998) (noting that a consumer of sexual images caused children

of pornographic abuse to suffer in various ways: (1) the abuse is perpetuated through

dissemination, (2) the existence of the image is an invasion of the child's privacy, and (3) the

demand for the creation of more images is created by the consumer).  Courts have recognized

that even a "'passive' consumer who merely receives or possesses the images directly contributes

to this continuing victimization."  Sherman, 268 F.2d at 545 (citations omitted).  "Indeed, one of

the reasons for criminalizing the 'mere' possession of child pornography is to create an incentive

for the possessor to destroy the material, and alleviate some of these harms to the children

depicted."  Sherman, 268 F.3d at 547.

      Here, victim impact statements submitted by an individual depicted in the images

Rubel possessed – who is known as "Vicky" – and by Vicky's family, bravely explain first-hand

the harm caused by the continued viewing of her being sexually abused as a child.  (PSR at 20 &

attachments).  As Vicky describes:

> I am 19 years old and am living everyday with the horrible knowledge that someone
> somewhere is watching the most terrifying moments of my life and taking grotesque
> pleasure in them.  I am a victim of the worst kind of exploitation: child porn.  Unlike
> other forms of exploitation, this one is never ending.  Everyday people are trading

A000053

and sharing videos of me as a little girl being raped in the most sadistic ways. They don't know me, but they have seen every part of me. They are being entertained by my shame and pain. . . . .

I feel like I am being raped by each and every one of them. What are they doing when they watch those videos anyway? They are gaining sexual gratification from images of me at ages 10 and 11. It sickens me to the core and terrifies me. Just thinking about it now, I feel myself stiffen and I want to cry. So many nights I have cried myself to sleep thinking of a stranger somewhere staring at their computer with images of a naked me on the screen. I have nightmares of it.

(PSR attachment). Additionally, Vicky describes in painful detail how the viewing of images of

sexual exploitation of her by individuals she does not know, such as Rubel, is harmful:

I have this overwhelming undefined fear that sweeps over me. This is for the biggest part because of the men who are downloading the pictures and videos of me. My father, who did the abuse, is now locked up and I have some peace in knowing that he can never hurt me again or hurt anyone else. I don't know that about any of these other men. For each of them, it is true that I don't know him; I don't even know what he looks like. And, it may seem strange, but the not knowing is a big part of what causes me such problems. What is so frightening is that I could have walked past him any day on the street and not know that he would have had seen me being raped as a little girl, and enjoyed my pain and humiliation. Any one of them could be around me and I would not even know it.

(PSR attachment). In determining the appropriate sentence for Rubel, the Court should take into

consideration the lasting harm inflicted upon the multitude of victims in his collection of child

pornography.

Second, the defendant possessed numerous images of child pornography over a

lengthy period of time, which he stored on multiple computers. In particular, at the time of his

arrest, the defendant possessed 46 videos and 80 photographs of child pornography. This

collection, while not a cache of thousands of archived images, nevertheless was extensive, so

extensive as to belie the defendant's attempts to minimize his criminal conduct. For example,

the defendant stated during a psychosexual evaluation that he had little interest in viewing child

A000054

pornography, but when it would pop up he would take a look at it, and he was not sure why many of the images were related to incest. (Report of Dr. Lau, at 8.) The defendant further denied having any sexual interest in children, even though he had viewed images with sexually explicit scenes with children for approximately 3 years. (PSR ¶ 47). This explanation strains credulity given that the defendant was found to have downloaded more than 125 separate files of child pornography, and is no cause for a below-Guidelines sentence.

Third, the defendant's conduct following his arrest in this case demonstrates the ineffectiveness of a non-incarceratory sentence in his case. While released on conditions of bail, the defendant violated numerous bail conditions, not only contravening instructions of pre-trial services but explicit orders of the Court given directly and emphatically to the defendant himself. The defendant used marijuana repeatedly, and was essentially expelled from two inpatient treatment programs for violating the rules. Particularly troubling is the defendant's conduct during his brief admission at the Sante Center in Texas, where the defendant engaged in sexual intercourse with another patient who has a borderline IQ. The defendant has already been given ample opportunity to demonstrate that he is not a danger to the community, and in less than a month conclusively demonstrated precisely the contrary.

Fourth, the defendant's mental health issues, or lack thereof, do not show that "Rubel has spent enough time in jail." (Def. Br., at 3). On the contrary, the psychosexual evaluation of Rubel performed by Dr. Kenneth J. Lau includes a particularly troubling conclusion about Rubel's risk of recidivism. ████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

A000055

████████████████████████ Because Rubel has shown an apparent inability to respond to treatment, the risk of his acting again based on sexual interest in children is not low. Defense counsel surmises, in fact, that Rubel's treatment may be the cause of his misbehavior, and describes that incarceration alone has brought out a sense of accountability in the defendant, who otherwise behaves "as a kid living inside a man's body." (Def. Br., at 2).

## CONCLUSION

For these reasons, the Government respectfully submits that a sentence within the Guidelines range would be sufficient but not greater than necessary to achieve the goals of sentencing under Section 3553(a).

Dated: November 18, 2010
　　　　 White Plains, New York

Respectfully submitted,
Preet Bharara
United States Attorney

By: _____

Benjamin Allee
Assistant United States Attorney
(914) 993-1962

9

AO 245B    (Rev. 09/08) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT
Southern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | ) **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | ) |
| BRIAN RUBEL | ) Case Number:  09 Cr. 00898 (CS) |
| | ) USM Number: 85175-954 |
| | ) Amy M. Attias, Esq. |
| | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)    Two

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☐ was found guilty on count(s) _____
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC 2252A(a)(5)(B) and (b)(2) | Possession of Child Pornography, a Class C Felony | 6/4/2009 | Two |

The defendant is sentenced as provided in pages 2 through **6** of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☑ Count(s)   One          ☑ is   ☐ are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

11/19/2010
Date of Imposition of Judgment

_____
Signature of Judge

Cathy Seibel, U.S.D.J.
Name of Judge                          Title of Judge

12/7/10
Date

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/7/10

**A000057**

AO 245B     (Rev. 09/08) Judgment in Criminal Case
            Sheet 2 — Imprisonment

Judgment — Page     2     of     6

DEFENDANT:  BRIAN RUBEL
CASE NUMBER:  09 CR. 00898-01 (CS)

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

Sixty-six (66) months on Count Two. Defendant is advised of his right to appeal.

☑  The court makes the following recommendations to the Bureau of Prisons:

Designate to a facility in which he can receive sex offender treatment, and if possible a qualifying facility nearest his residence.

☑  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

  ☐  at _____  ☐ a.m.  ☐ p.m.  on _____ .

  ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

  ☐  before 2 p.m. on _____ .

  ☐  as notified by the United States Marshal.

  ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

A000058

AO 245B    (Rev. 09/08) Judgment in a Criminal Case
           Sheet 3 — Supervised Release

DEFENDANT: BRIAN RUBEL                                                  Judgment—Page ___3___ of ___6___
CASE NUMBER:  09 CR. 00898-01 (CS)

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

   Life on Count Two.

      The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance.  The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☑ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse.  *(Check, if applicable.)*

☑ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.  *(Check, if applicable.)*

☑ The defendant shall cooperate in the collection of DNA as directed by the probation officer.  *(Check, if applicable.)*

☑ The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense.  *(Check, if applicable.)*

☐ The defendant shall participate in an approved program for domestic violence.  *(Check, if applicable.)*

      If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

      The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)  the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)  the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)  the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)  the defendant shall support his or her dependents and meet other family responsibilities;

5)  the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)  the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)  the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)  the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)  the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

A000059

AO 245B    (Rev. 09/08) Judgment in a Criminal Case
           Sheet 3C — Supervised Release

Judgment—Page _____ of _____ 1

DEFENDANT: BRIAN RUBEL
CASE NUMBER: 09 Cr. 00898 (CS)

## SPECIAL CONDITIONS OF SUPERVISION

The defendant will participate in a program approved b the United States Probation Office, which program may include testing to determine whether the defendant has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the probation officer. The defendant will be required to contribute to the costs of services rendered (co-payment) in an amount determined by the probation officer, based on ability to pay or the availability of third-party payment.

The defendant shall undergo a sex-offense-specific evaluation and participate in a sex offender treatment and/or mental health treatment program approved by the probation officer. The defendant shall abide by all rules, requirements, and conditions of the sex offender treatment program(s) including submission to polygraph testing. The defendant shall waive his right of confidentiality in any records for mental health assessment and treatment imposed as a consequence of this judgment to allow the probation officer to review the defendant's course of treatment and progress with the treatment provider. The defendant will be required to contribute to the costs of services rendered in an amount approved by the probation officer, based on ability to pay or availability of third-party payment.

For the first five (5) years of supervised release, the defendant shall not have deliberate contact with any child under 18 years of age, unless approved by the probation officer. For the first five (5) years of supervised release the defendant shall not loiter within 100 feet of schoolyards, playgrounds, arcades, or other places primarily used by children under the age of 18.

The defendant shall participate in the Computer/Internet Monitoring program administered by the U.S. Probation Office. The defendant must provide the U.S. Probation Office advance notification of any computer(s), automated service(s), or connected device(s) that will be used during the term of supervision and that can access the internet. The U.S. Probation Office is authorized to install any application as necessary to survey all activity on any computer(s) or connected devices owned or operated by the defendant. The defendant may be required to pay the cost of monitoring services at the monthly rate provided by the U.S. Probation Office. The U.S. Probation Office will be notified via electronic transmission of impermissible/suspicious activity or communications occurring on such computer or connected device, consistent with the computer monitoring policy in effect by the probation office. As triggered by impermissible/suspicious activity, the defendant shall consent to and cooperate with unannounced examinations of any computer equipment owned or used by the defendant. This examination shall include but is not limited to retrieval and copying of all data from the computer(s), connected device(s), storage media, and any internal or external peripherals, and may involve removal of such equipment for the purpose of conducting a more thorough inspection. Any employer who employs the defendant in a position in which he will have computer access at work is to be notified of this condition.

The defendant shall submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects to a search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions.

The defendant is to report to the nearest probation office within 72 hours of release form custody.

It is recommended that the defendant be supervised by the district of residence.

AO 245B   (Rev. 09/08) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

| | | | Judgment — Page 5 of 6 |

DEFENDANT:  BRIAN RUBEL
CASE NUMBER:  09 CR. 00898-01 (CS)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| **TOTALS** | $ 100.00 | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| **TOTALS** | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the  ☐ fine  ☐ restitution.

    ☐ the interest requirement for the  ☐ fine  ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**A000061**

AO 245B    (Rev. 09/08) Judgment in a Criminal Case
           Sheet 6 — Schedule of Payments

|  |  |  |
|---|---|---|
| | Judgment — Page | __6__ of __6__ |

DEFENDANT:  BRIAN RUBEL
CASE NUMBER:  09 CR. 00898-01 (CS)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☑ Lump sum payment of $ ___100.00___ due immediately, balance due

    ☐ not later than _____ , or
    ☐ in accordance    ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

**B** ☐ Payment to begin immediately (may be combined with   ☐ C,     ☐ D, or   ☐ F below); or

**C** ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D** ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

    Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

AO 245D   (Rev. 09/11) Judgment in a Criminal Case for Revocations
          Sheet 1

# UNITED STATES DISTRICT COURT

Southern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | **Judgment in a Criminal Case** |
| v. | (For **Revocation** of Probation or Supervised Release) |
| BRIAN RUBEL | |

Case No.   7:09-cr-00898 (CS)

USM No. 85175-054

Susanne Brody, Esq
_____
Defendant's Attorney

**THE DEFENDANT:**

☑ admitted guilt to violation of condition(s)   One, Two, Three, and Four   of the term of supervision.

☐ was found in violation of condition(s) _____ after denial of guilt.

The defendant is adjudicated guilty of these violations:

| Violation Number | Nature of Violation | Violation Ended |
|---|---|---|
| One | On or about August 12, 2015, to August 2016, the Supervised Releasee failed to participate in sex offender treatment, in that the Supervised Releasee failed to comply with sex offender treatment at the Counseling and Psychology Center, Inc. | 08/31/2016 |

The defendant is sentenced as provided in pages 2 through ___5___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has not violated condition(s) _____ and is discharged as to such violation(s) condition.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

Last Four Digits of Defendant's Soc. Sec. No.: 2668

Defendant's Year of Birth:   1985

City and State of Defendant's Residence:
Dobbs Ferry, NY

09/14/2016
_____
Date of Imposition of Judgment

_Cathy Seibel_
_____
Signature of Judge

Cathy Seibel, U.S.D.J.
_____
Name and Title of Judge

10/4/16
_____
Date

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/4/2016

**A000063**

AO 245D    (Rev. 09/11) Judgment in a Criminal Case for Revocations
Sheet 1A

Judgment—Page __2__ of __5__

DEFENDANT: BRIAN RUBEL
CASE NUMBER: 7:09-cr-00898 (CS)

## ADDITIONAL VIOLATIONS

| Violation Number | Nature of Violation | Violation Concluded |
|---|---|---|
| | (CPC). Special Condition, a Grade C Violation. | |
| Two | On or about August 8, 2016, the Supervised Releasee had deliberate contact with a child under the age of 18 years old without the permission of the Probation Officer. Special Condition, a Grade C Violation. | 08/08/2016 |
| Three | On or about June 16, 2016, the Supervised Releasee loitered within 100 feet of school yards, playgrounds, arcades, or other places primarily used by children under the age of 18 years old. Special Condition, a Grade C Violation. | 06/16/2016 |
| Four | On or about March 28, 2016, the Supervised Releasee failed to truthfully answer inquiries of the Probation Officer, in that Brian Rubel knowingly and willfully made false statements when questioned about using his school computer for internet on-line activities, such as Facebook, that were not approved by the U.S. Probation Officer. Condition 3, a Grade C Violation. | 03/28/2016 |

A000064

AO 245D   (Rev. 09/11) Judgment in a Criminal Case for Revocations
Sheet 2— Imprisonment

Judgment — Page   3   of   5

DEFENDANT:  BRIAN RUBEL
CASE NUMBER:  7:09-cr-00898 (CS)

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of :

Twelve (12) months on Specifications One, Two, Three, and Four, concurrent.  Defendant is advised of his right to appeal.

☐  The court makes the following recommendations to the Bureau of Prisons:

☑  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

  ☐  at _____ ☐ a.m.  ☐ p.m.  on _____

  ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

  ☐  before 2 p.m. on _____

  ☐  as notified by the United States Marshal.

  ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

Case 7:09-cr-00898-CS   Document 21   the Court's imposition of a Special Condition,
requiring substance abuse treatment and testing.

AO 245D    (Rev. 09/11) Judgment in a Criminal Case for Revocations
           Sheet 3 — Supervised Release

Judgment—Page __4__ of __5__

DEFENDANT: BRIAN RUBEL
CASE NUMBER: 7:09-cr-00898 (CS)

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of:

The Court revokes the previously imposed term of Supervised Release, and re-imposes a term of Supervised Release of Life.

    The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter as determined by the court.

☑    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☑    The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if

☑    The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☑    The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

    If this judgment imposes a fine or restitution, it is be a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

    The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

Case 7:09-cr-00898-CS   Document 21   Filed 10/04/16   Page 5 of 5

AO 245D    (Rev. 09/11) Judgment in a Criminal Case for Revocations
           Sheet 3C — Supervised Release

Judgment—Page   5   of   5

DEFENDANT: BRIAN RUBEL
CASE NUMBER: 7:09-cr-00898 (CS)

## SPECIAL CONDITIONS OF SUPERVISION

substance abuse

The defendant will participate in a program approved b the United States Probation Office, which program may include testing to determine whether the defendant has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the probation officer. The defendant will be required to contribute to the costs of services rendered (co-payment) in an amount determined by the probation officer, based on ability to pay or the availability of third-party payment.

The defendant shall undergo a sex-offense-specific evaluation and participate in a sex offender treatment and/or mental health treatment program approved by the probation officer. The defendant shall abide by all rules, requirements, and conditions of the sex offender treatment program(s) including submission to polygraph testing. The defendant shall waive his right of confidentiality in any records for mental health assessment and treatment imposed as a consequence of this judgment to allow the probation officer to review the defendant's course of treatment and progress with the treatment provider. The defendant will be required to contribute to the costs of services rendered in an amount approved by the probation officer, based on ability to pay or availability of third-party payment.

For the first five (5) years of supervised release, the defendant shall not have deliberate contact with any child under 18 years of age, unless approved by the probation officer.  For the first five (5) years of supervised release the defendant shall not loiter within 100 feet of schoolyards, playgrounds, arcades, or other places primarily used by children under the age of 18.

The defendant shall participate in the Computer/Internet Monitoring program administered by the U.S. Probation Office. The defendant must provide the U.S. Probation Office advance notification of any computer(s), automated service(s), or connected device(s) that will be used during the term of supervision and that can access the internet. The U.S. Probation Office is authorized to install any application as necessary to survey all activity on any computer(s) or connected devices owned or operated by the defendant. The defendant may be required to pay the cost of monitoring services at the monthly rate provided by the U.S. Probation Office. The U.S. Probation Office will be notified via electronic transmission of impermissible/suspicious activity or communications occurring on such computer or connected device, consistent with the computer monitoring policy in effect by the probation office.  As triggered by impermissible/suspicious activity, the defendant shall consent to and cooperate with unannounced examinations of any computer equipment owned or used by the defendant. This examination shall include but is not limited to retrieval and copying of all data from the computer(s), connected device(s), storage media, and any internal or external peripherals, and may involve removal of such equipment for the purpose of conducting a more thorough inspection. Any employer who employs the defendant in a position in which he will have computer access at work is to be notified of this condition.

The defendant shall submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects to a search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions.

The defendant is to report to the nearest probation office within 72 hours of release from custody.

It is recommended that the defendant be supervised by the district of residence.

A000067

# NOTICE OF APPEAL
## UNITED STATES DISTRICT COURT

**RECEIVED**
**SEP 16 2016**
**U.S.D.C.**
**W.P.**

**SOUTHERN** District of **NEW YORK**

UNITED STATES OF AMERICA

Docket Number **09 CR. 898 (CS)**

- v -

**HONORABLE CATHY SEIBEL**

**BRIAN RUBEL**

(District Court Judge)

Notice is hereby given that **the defendant BRIAN RUBEL**
appeals to the United States Court of Appeals for the Second Circuit from the:

judgment ✓ : order ☐ : other ☐ :

(specify)

entered in this action on ____ **09/14/16** ____
(date)

Offense occurred after November 1, 1987    Yes ✓    No ☐

The appeal concerns:    conviction only ☐ :    sentence only ✓ :    conviction and sentence ☐

Date: **September 16, 2016**

TO:    Benjamin Allee, Esq.
Assistant United States Attorney
300 Quarropas Street
White Plains, New York 10601

Barry Leiwant, Esq.
(Counsel for Appellant)

Address: Federal Defenders of New York, Inc.

52 Duane Street - 10th Flor

New York NY 10007

Telephone Number (212) 417-8700

ADD ADDTIONAL PAGE IF NECESSARY

(TO BE COMPLETED BY ATTORNEY)

TRANSCRIPT INFORMATION - FORM B

| ➤ QUESTIONNAIRE | ➤ TRANSCRIPT ORDER | DESCRIPTION OF PROCEEDINGS FOR WHICH TRANSCRIPT IS REQUIRED (INCLUDE DATE). |
|---|---|---|

✓ I am ordering a transcript
☐ I am not ordering a transcript
Reason:
☐ Daily copy is available
☐ U.S. Attorney has placed order
☐ Other. Attach explanation

Prepare transcript of                      Dates
☐ Pre-trial proceedings ____
☐ Trial ____
✓ Sentence ____ 9/14/16 ____
☐ Post-trial proceedings ____

The ATTORNEY certifies that he/she will make satisfactory arrangements with the court reporter for payment of the cost of the transcript.
(FRAP 10(b))    ➤ Method of payment ☐ Funds ☐ CJA Form 24

ATTORNEY'S signature    **Susanne Brody, Esq.**    DATE    **9/16/16**

➤ **COURT REPORTER ACKNOWLEDGMENT**

To be completed by Court Reporter and forward to Court of Appeals.

| Date order received | Estimated completion date | Estimated number of pages |
|---|---|---|

Date _____    Signature _____
(Court Reporter)

COPY 1 - ORIGINAL

**A000068**

_____

### CERTIFICATE OF SERVICE

I certify that a copy of this appendix has been served by CM/ECF electronic filing on the United States Attorney/S.D.N.Y.; Attention: **BENJAMIN ALLEE, ESQ.,** Assistant United States Attorney, One St. Andrew's Plaza, New York, New York 10007; and by first class mail on **BRIAN RUBEL** Reg. No. 85175-054, MCC, New York 150 Park Row, New York, New York 10007.


Dated:  New York, New York
        February 28, 2017

                              *Philip L. Weinstein*
                              **PHILIP L. WEINSTEIN**